[No. B015861. Second Dist., Div. Seven. July 22, 1986.]

Estate of ANTONIO P. GUERRERO, Deceased.
ROSALIO CASILLAS, Petitioner and Respondent, v.
FRANCISCA ZAMORA GUERRERO et al., Contestants and Appellants.

**COUNSEL**

David S. Kirbach for Contestants and Appellants.

McNairy & Baker and Robert N. Baker, Jr., for Petitioner and Respondent.

**OPINION**

**LILLIE, P. J.**—This is an appeal from an order made in a probate proceeding.

## Factual and Procedural Background

In 1970 Antonio Guerrero, a native of Mexico and a resident of Santa Monica, California, had a will drawn in the Spanish language by a notary public at Guadalajara, Mexico, while he was visiting that city. The will named Virginia Casillas as sole beneficiary; Mrs. Casillas and her son, Rosalio Casillas, residents of Santa Monica, California, were nominated executors of the estate. In 1984 testator died a resident of Los Angeles County, leaving real and personal property located in said county. Virginia Casillas declined to act as executrix of testator's estate. Rosalio Casillas petitioned the Superior Court of Los Angeles County for probate of the will and appointment as executor. Francisca Guerrero, Donaciana Zamora and Adela Zamora, nieces of the testator, contested the will on the grounds it was not duly executed, was not admitted to probate in Mexico and, in any event, was revoked. Petitioner and Mrs. Casillas filed an answer to the contest.

On a nonjury trial, a witness familiar with the law of Mexico pertaining to the execution of wills testified for petitioner: In order to make a public open will, the testator appears before a notary public and declares his will to the notary and three witnesses; the notary draws up the will in accordance with the testator's wishes, enters it in his register, and reads it aloud to the testator and the witnesses, all of whom (including the notary) then sign it; the notary gives the testator a first, certified copy of the will and gives the original to the officer in charge of public documents in the state where the will was executed; the officer keeps the original of the will in his archives where it remains as a permanent document. Petitioner offered, and the court received in evidence, a duly authenticated copy of the original of Guerrero's will, accompanied by an English translation,[1] which showed that the will was executed in conformity with Mexican law as described by the expert witness. Petitioner also produced proof of the genuineness of the testator's signature. Contestants presented evidence intended to show, among other things, that the will was revoked.

The court found as facts: The original will, executed by the testator, was executed as a public open will in conformity with Mexican law and was proved by a duly authenticated copy, the original will being held in the official custody of the Mexican government; the will was not revoked by the testator or by operation of law. On June 10, 1985, an order was signed and filed denying the contest of the will, admitting the will to probate, and appointing Rosalio Casillas executor of the estate.

---

[1] The translation was made by an official expert translator, authorized by the Superior Court of Justice for the Federal District of Mexico, who attested to its accuracy before the vice consul of the United States.

Contestants appeal from that order.

## DISCUSSION

### I

### APPEALABILITY OF ORDER

■ An order admitting a will to probate is appealable. (Prob. Code, § 1240, subd. (c).) The order of June 10, 1985, includes the following provision: "[T]he authenticated copy of the decedent's will dated November 12, 1970 introduced in evidence as [petitioner's] exhibit 'A', is was admitted to probate herein by minute order on April 22, 1985."[2] (Emphasis added.) Contrary to that conclusion, the will was not admitted to probate by the minute order mentioned. The minutes of April 22, 1985, state: "In the cause heretofore submitted on March 19, 1985, the court makes its ruling and order as set forth in the court's intended decision signed and filed this date. [¶] Copies of the court's decision sent by U.S. mail this date to counsel for the appearing parties. [¶] Counsel for petitioner is directed to prepare the order." It is a matter of procedure whether the court makes its final decision by minute order without a direction that a written order be prepared, or elects to enter a direction that a formal order be prepared. (*Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 304 [259 P.2d 901].) Where a further or formal order is required an appeal lies from that order, not from the minute order directing preparation of the formal order. (See *In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 677 [190 Cal.Rptr. 469].) The minute order of April 22, 1985, directed preparation of an order embodying the court's determination of the matters submitted to it on the petition and the contest. The order of June 10, 1985, prepared in response to the minute order, includes a provision admitting the will to probate. Such is the effect of the June 10 order, notwithstanding the court's alteration thereof in an attempt to show that the will previously was admitted to probate by minute order.

We conclude that the order of June 10, 1985, is appealable as an order admitting the will to probate (Prob. Code, § 1240, subd. (c)), and turn to the merits of the appeal.

### II

### VALIDITY OF WILL

While the authenticated copy of the will satisfied the best evidence rule (Evid. Code, §§ 1500, 1506, 1530), it did not serve as proof of the gen-

---

[2]In the order submitted to the court by counsel for petitioner, the court deleted the word "is," substituted therefor the word "was," and added the underscored language at the end of the provision.

uineness of any of the signatures therein. (*Id.*, § 1451; 64 Cal.Jur.3d, Wills, § 244, p. 459.) Citing Probate Code section 372,[3] appellants argue, as they did in the trial court, that the will is invalid because the subscribing witnesses were not produced, nor was there evidence of other witnesses to prove due execution of the will such as proof of the handwriting of the subscribing witnesses.

Probate Code former section 26[4] provided in pertinent part: "No will made out of this state is valid as a will in this state unless (1) executed according to the provisions of this act, or (2) executed according to the laws of the state in which it was executed . . . ." Guerrero's will was valid under the second alternative, wherein the word "state" includes foreign nations as well as other states of the United States. (*Estate of Hudson* (1982) 137 Cal.App.3d 984, 986-987 [187 Cal.Rptr. 532].) However, "[a] will does not become operative merely because it was duly executed, and not revoked, in accordance with substantive law provisions. To achieve effectiveness, it must also meet the statutory requirements prescribed in the code for admission to probate." (*Estate of Lane* (1970) 7 Cal.App.3d 402, 406 [86 Cal.Rptr. 620].) As appellants point out, while the will "depends for its validity upon the laws under which it was made, as to its proof the general rule applies, that, in matters of evidence, as in the mode of remedy, the law of the forum must govern." (*Tevis* v. *Pitcher* (1858) 10 Cal. 465, 478-479; see also *Pfingsten* v. *Westenhaver* (1952) 39 Cal.2d 12, 19 [244 P.2d 395]; *Sadberry* v. *Griffiths* (1961) 191 Cal.App.2d 610, 614 [12 Cal.Rptr. 773].)

Probate Code section 372 relates to evidence in contests before probate. It does not, however, specify that the petitioner must produce the evidence mentioned therein. Allocation of the burden of proof in preprobate contests is explained as follows in *Estate of Relph* (1923) 192 Cal. 451, 458-459 [221 P. 361]: "When a will is contested before probate there are two separate and distinct proceedings pending before the court. One is the petition for the probate of the will; the other is the contest of the probate of the will. [Citations.] The petition for the probate of a will is distinctly a proceeding *in rem*. [Citations.] The petitioner or proponent appears therein as plaintiff and tenders to all of the world all of the issues of fact relevant to the ultimate question of the validity of the will. While all persons interested in the estate are in a sense parties defendant thereto, there are no defendants in the sense

---

[3]Probate Code section 372: "If the will is contested, all the subscribing witnesses who are present in the county, and who are of sound mind, must be produced and examined; and the death, absence, or insanity of any of them must be satisfactorily shown to the court. If none of the subscribing witnesses resides in the county, and the evidence of none of them can be produced, the court may admit the evidence of other witnesses to prove the due execution of the will; and, as evidence of the execution, it may admit proof of the handwriting of the testator and of any of the subscribing witnesses."

[4]Former section 26 was repealed (Stats. 1983, ch. 842, § 18, operative Jan. 1, 1985) but, pursuant to existing section 6103, continues to apply where the testator died before January 1, 1985.

of active parties litigant in this proceeding. It is in a sense an *ex parte* proceeding, in which the burden rests upon the petitioner to prove all the material allegations of his petition, whether denied or not, and the responsibility is upon the court to guard and protect the interests of all persons interested therein. The contest of a will, on the other hand, while a proceeding *in rem,* is at the same time an adversary proceeding, the parties to which consist, on the one hand, of those persons interested in the estate who have appeared and filed written grounds of opposition to the probate of the will (commonly referred to as the contest); and, on the other hand, those persons interested in the will who have appeared and filed written answer thereto. The only issues of fact involved therein are those which are framed by the allegations of the contest and the denials of the answer. [Citation.] As to those issues the burden of proof rests upon the contestants [citations], and the proponents are not called upon to submit any evidence until the contestants shall have produced some evidence legally sufficient to support their allegations upon one or more of those issues. *If the contestants fail to produce such evidence, the decision of the contest must be against them, even though the proponents produce no evidence therein whatsoever.* [Citation.]" (Italics added.)

▪ In his petition for probate, a printed form, respondent merely requested that the will be admitted to probate and attached to the petition copies of the will in the Spanish language and an English translation thereof; he did not allege that the will was duly executed. The issue of due execution was raised in appellants' contest which alleged "lack of due execution as a will," appellants later specifying lack of proof of genuineness of the witnesses' signatures. Under these circumstances, petitioner did not have the burden of producing proof of the handwriting of the witnesses. (Evid. Code, § 550.) Appellants, in order to sustain the allegations of their contest, had the burden of proving that the signatures of the witnesses were not genuine (*id.,* § 500) despite the fact that such is a negative proposition. (See *Estate of Latour* (1903) 140 Cal. 414, 421 [73 P. 1070].) Having failed to sustain that burden, appellants are in no position to claim that the will is invalid for lack of proof of the handwriting of the subscribing witnesses.

### III

#### VALIDITY OF PROBATE

Respondent's expert witness read into the record the following excerpt from a Martindale-Hubbell law digest, which the witness stated accurately sets forth the law of Mexico: "The notary issues a certified copy . . . which serves as an original in all estate proceedings." Based on that evidence appellants contend the authenticated copy of the original will cannot be admitted to probate in California because under Mexican law such a copy does not serve as the original in probate proceedings; rather, it is the first

copy of the will, given by the notary to the testator, which serves that function. ■ While the validity of the will was governed by the law of Mexico (Prob. Code, former § 26), proof of the will was not. "'When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.' [Citation.]" (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666]; fn. omitted.) The testator was a resident of California both when he executed the will and when he died; his entire estate, real and personal property, is located in California; the executor, the sole beneficiary and one of the contestants reside here. Under these circumstances, Mexico has no interest in the application of its law regarding proof of wills. The law of California properly was applied to permit admission of a duly authenticated copy of the original will to probate. (See Prob. Code, § 330; Evid. Code, §§ 1500, 1506, 1530.)

■ Appellants further argue that testator could have revoked his will by destroying or altering the first copy thereof in his possession and, because there were no probate proceedings in Mexico, appellants were denied the opportunity to show that he did so. The contention lacks merit. Probate Code sections 360 to 362 create a conclusive presumption of the validity of foreign wills only if they have been proven in foreign proceedings. Under these sections, "a will which has been admitted to probate or otherwise proven in a foreign country is allowed into probate in California without further showing; no contest of the will as invalid due to execution defects, fraud, undue influence and the like is allowed. Under section 26, however, the will at issue has not necessarily been established in any foreign proceeding and contests of its validity are allowed." (*Estate of Hudson, supra,* 137 Cal.App.3d 984, 986.) As appellants concede, Guerrero's will was not admitted to probate or otherwise proven in Mexico. Accordingly, in the present proceeding they were allowed to contest the validity of the will and presented evidence in support of their allegation that the will was revoked by testator. However, they offered no evidence in support of the theory which they advance here, i.e., revocation by testator's destruction or alteration of the first copy of the will.

IV

REVOCATION OF WILL

A friend of the testator, licensed to practice law in Mexico, testified for appellants that in 1983 testator showed the first copy of his will to the witness and asked him whether it was "legal"; the witness replied that it was not legal because it was not signed by testator. Another witness, also a friend of testator, testified that when testator was in the hospital shortly before his death the witness asked him what he was going to do with his

building, the principal asset of his estate; testator did not tell the witness that he had made any provision for disposition of the building after his death.

Appellants argue that the foregoing evidence showed testator did not believe he had a will and under equitable principles effect should be given to such mistaken belief by "construct[ing] an act of revocation." In support of this contention appellants rely on the following language in 2 Page on Wills (Bowe-Parker rev. 1960) section 21.29, page 389: "A mistake of law case arises where a party knows all of the material facts but is mistaken as to some rule of law applicable thereto, and under such mistake, he acts in a manner different from that in which he would have acted if he had known the applicable rules of law." Appellant's reliance is misplaced for the author further notes: "[I]t is generally held that an act done under such a mistake does not amount to a revocation." (2 Page on Wills, *op. cit. supra*; fn. omitted.) A like result obtains in California under the doctrine of dependent relative revocation. "'Under the doctrine . . . an earlier will, revoked only to give effect to a later one on the supposition that the later one will become effective, remains in effect to the extent that the latter proves ineffective. [Citations.] The doctrine is designed to carry out the probable intention of the testator when there is no reason to suppose that he intended to revoke his earlier will if the later will become inoperative. [Citations.]'" (*Estate of Cuneo* (1963) 60 Cal.2d 196, 202 [32 Cal.Rptr. 409, 384 P.2d 1], quoting from *Estate of Kaufman* (1945) 25 Cal.2d 854, 858-859 [155 P.2d 831].)

Whether labeled "mistake of law" or "dependent relative revocation," the principle upon which appellants rely to establish revocation does not aid them. Its purpose and effect is to nullify an attempted revocation made under the mistaken belief that a later will is effective, not to work a revocation where none was attempted and a second will was not made.

DISPOSITION

The order of June 10, 1985, is affirmed.

Thompson, J., and Johnson, J., concurred.

A petition for a rehearing was denied August 13, 1986, and appellants' petition for review by the Supreme Court was denied October 16, 1986.